988 So.2d 861 (2008)
STATE of Louisiana, Appellee
v.
Kenneth Wayne SMITH, Appellant.
No. 43,291-KA.
Court of Appeal of Louisiana, Second Circuit.
August 13, 2008.
*863 Tutt, Stroud & McCay, LLC, by A.M. Stroud, III, Shreveport, for Appellant.
Paul J. Carmouche, District Attorney, Brady O'Callaghan, Assistant District Attorney, for Appellee.
Before GASKINS, PEATROSS and DREW, JJ.
GASKINS, J.
The defendant, Kenneth Wayne Smith, was convicted by jury verdict of aggravated arson. He was adjudicated a third felony offender and was sentenced to serve 14 years at hard labor without benefit of probation or suspension of sentence; the first two years of the sentence were also ordered to be served without parole. The defendant appeals, claiming insufficiency of the evidence against him and ineffective assistance of counsel. For the following *864 reasons, we affirm the conviction and sentence.

FACTS
On January 23, 2006, shortly after midnight, Darnell Duncan heard an explosion outside his house. He looked out the window and discovered that his 2002 Chevrolet Blazer, parked in his carport, was on fire. He called his sister, who lived next door, to contact the police. His brother-in-law came over and put the fire out with a fire extinguisher.
Police and fire investigators discovered a wooden cross wrapped with partially burned cloth about three feet from the rear tire of the vehicle. The cross was constructed from a surveyor's stake and a 1×2 board. Another cross was found at the corner of the house and carport, stuck in a flower pot, with matches inserted between the wood and the cloth. This cross did not burn. Both crosses had been soaked with an accelerant. Hoods with eye holes were discovered on a light pole in the victim's yard and near his deck. The fabric used to wrap the crosses and to fashion the hoods had a palm tree pattern on it.
Law enforcement officials questioned the victim regarding whether he had any problems with anyone who might have set the fire. Mr. Duncan was the head custodian at Herndon Magnet School. He identified two persons with whom he had recently had conflict. One was a teacher and the other was the defendant, who worked under Mr. Duncan as a groundskeeper at the school. The teacher was eliminated as a suspect.
According to Mr. Duncan, he had known and worked with the defendant for a while. The defendant had been using the laundry facilities at the school. Mr. Duncan asked him to do his washing in the early morning hours. The defendant failed to comply. Instead, he came to the school in the evenings and did laundry. After numerous warnings not to engage in this behavior, Mr. Duncan told the defendant that no one would be able to use the school laundry facilities anymore.
James Alexander, the deputy fire marshal, interviewed the defendant who gave his consent to a search of his home. The defendant's mobile home was decorated with a palm tree motif. A piece of fabric was retrieved from a trash can in the house that had a palm tree pattern similar to the cloth collected at the crime scene. Deputy Alexander also collected pieces of two 1×2 boards on top of a dog pen behind the mobile home that bore the same UPC bar code as the pieces of wood found at the crime scene. After being administered his Miranda rights, the defendant stated that he purchased the wood found at his house at a Home Depot store.
The defendant was arrested and charged by bill of information with aggravated arson of a residence, a violation of La. R.S. 14:51. He was tried by jury and convicted as charged on September 20, 2006. That same day, the defendant filed a motion for post verdict judgment of acquittal, arguing that the evidence presented at trial was insufficient to support a conviction for aggravated arson.
In December 2006, the defendant secured new counsel who filed a supplemental motion for post verdict judgment of acquittal, in which he argued that there were no fingerprints, DNA, or eyewitness testimony linking the defendant to the scene. The defendant also filed a motion for new trial, claiming that the verdict was contrary to the law and evidence. He asserted that there was no evidence placing him at the scene of the arson. He also urged that his trial counsel was ineffective and a new trial should be granted in the *865 interest of justice. On February 26, 2007, the trial court heard argument on the motions and denied the motion for new trial, as well as the motion for post verdict judgment of acquittal and the supplemental motion for post verdict judgment of acquittal.
In October 2006, the prosecution charged the defendant as a third felony offender, contending that he had a prior conviction in this state for illegal possession of stolen things and a conviction in Texas for burglary of a habitation. In March 2007, the trial court adjudicated the defendant a third felony offender and sentenced him to serve 14 years at hard labor, to be served without benefit of probation or suspension of sentence. Further, the first two years of the sentence were ordered to be served without the benefit of parole.[1] The defendant filed a motion to reconsider the sentence; the motion was denied by the trial court. The defendant then appealed, arguing that the evidence was insufficient to support his conviction for aggravated arson and that his trial counsel was ineffective.

SUFFICIENCY OF THE EVIDENCE
The defendant argues that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could not have found that the essential elements of aggravated arson of a residence had been established beyond a reasonable doubt. This argument is without merit.

Legal Principles
The standard of appellate review for a sufficiency claim, as set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is now legislatively embodied in La. C. Cr. P. art. 821. This standard does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. The reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Hill, 42,025 (La.App. 2d Cir.5/9/07), 956 So.2d 758, writ denied, XXXX-XXXX (La.12/14/07), 970 So.2d 529.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Youngblood, 41,976 (La.App. 2d Cir.5/9/07), 957 So.2d 305, writ denied, XXXX-XXXX (La.12/14/07), 970 So.2d 530.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if *866 believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Youngblood, supra.
When circumstantial evidence forms the basis for the conviction, assuming every fact to be proved that the evidence tends to prove, in order to convict, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia, supra. State v. Youngblood, supra.
However, the Jackson standard is applicable in all cases whether or not circumstantial evidence is involved. Although the circumstantial evidence rule of La. R.S. 15:438 does not establish a stricter standard of review than the more general reasonable doubt formula, it emphasizes the need for careful observation of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. State v. Stanford, 574 So.2d 443 (La.App. 2d Cir.1991).
Aggravated arson is the intentional damaging by any explosive substance or the setting fire to any structure, watercraft, or movable whereby it is foreseeable that human life might be endangered. La. R.S. 14:51. Even slight damage to a structure, such as scorching, is sufficient evidence of damage to a structure to support a charge of aggravated arson. See State v. Williams, 457 So.2d 610 (La.1984).

Discussion
On appeal, the defendant argues that he was charged with aggravated arson of a residence, yet there is no evidence that the residence of the victim received any damage whatever. He contends that, without proof of contact of the fire with the residence, an essential element of the offense is missing. According to the defendant, no evidence was presented at trial to show that the victim's residence was damaged by either an explosive substance or fire. This argument is without merit.
Deputy Alexander testified at trial as an expert in the cause and origins of fires. He investigated the fire in the present case and saw a melted plastic container of charcoal lighter fluid on the floor of the victim's carport, next to the victim's vehicle. Dry powder from a fire extinguisher was scattered about the scene. Deputy Alexander observed one partially burned cross constructed of wood and fabric on the floor of the carport near the victim's vehicle. Another cross was found in a flower pot next to the house. The fabric on both crosses had a palm tree pattern. The fabric also had the smell of a flammable liquid. The crosses were constructed from surveyor's stakes and 1×2 boards. There was a store bar code on some of the wood. There were matches between the wood and fabric on the cross in the flower pot, from a failed effort to ignite the cross. According to Deputy Alexander, the fire posed a danger to human life. The fire was set around midnight while Mr. Duncan slept in the house. One of the crosses was ignited next to the rear tire of the vehicle, close to the gas tank, posing a significant risk of harm. If Mr. Duncan had not awakened, the fire in the carport could have consumed the house. Also, if the cross in the fire pot had burned successfully, it could have ignited the house.
*867 In investigating this incident, Deputy Alexander talked with the defendant who consented to a search of his house. Two pieces of wood were found on top of the defendant's pit bull pen which had the same store bar code as the wooden crosses found at the scene. The defendant admitted that he purchased the wood found at his house at a local Home Depot store. A search of the house revealed fresh sawdust on the front porch. The mobile home was decorated in a palm tree motif. Fabric in the defendant's trash can matched that used to fashion the hoods found at the scene.
Detective Kay Ward of the Caddo Sheriff's Office aided in the investigation of this offense. She corroborated Deputy Alexander's testimony that the palm tree fabric in the defendant's trash can looked like the hoods found at the scene had been cut from it.
Randall Roillard, the forensic chemistry supervisor at the North Louisiana Crime Lab, testified as an expert in this case. He analyzed a piece of fabric found at the scene and determined that it was soaked with gasoline. He stated that the fabric appeared to be part of a bed sheet with a print on it.
Richard Beighley, a criminalist at the North Louisiana Crime Lab, was accepted as an expert in fracture match comparison. He matched the grain of the wood found at the scene with that found at the defendant's house. He determined that one piece of wood found at the defendant's residence and one of the partially burned pieces retrieved from the crime scene were once one eight-foot-long 1×2 board.
Darnell Duncan, the victim in this case, testified that he had worked at Herndon Magnet School for 22 years and had been the head custodian for 17 years. He stated that on the night of January 23, 2006, he was sleeping in his house when he heard a big explosion. He looked outside and discovered that his vehicle was on fire. His brother-in-law who lives next door helped him put the fire out. He detailed finding the hoods and the crosses. He identified the defendant as someone with whom he had worked at the school and described their conflict regarding the school laundry facilities.
Kenyatta Johnson, the defendant's daughter, testified on his behalf. She stated that she and her child were living in the mobile home with her parents in January 2006. She claimed that on the evening of this incident, she watched a couple of movies and went to bed at 12:30. She said that the defendant was watching a movie in another room and stuck his head into her room and then went to bed about ten minutes before she did.
Suzie Smith, the defendant's wife, testified that the defendant was at home on the night this incident occurred. She stated that she went to bed before the defendant and believed that he came to bed around 12:15. Mrs. Smith said that the sawdust on the porch was the result of another project the defendant had been working on. She denied having any sheets with palm trees, even though the mobile home was decorated extensively with palm trees.
Deputy Alexander testified on rebuttal that when he questioned the defendant's daughter during the investigation, she told him that she watched a movie in her room. She also stated that the defendant stuck his head into her room between 12:20 and 12:30. Deputy Alexander testified that the defendant's wife did not tell him that the defendant came to bed around 12:15. The evidence showed that the defendant lived just a short distance down the street from the victim.
Pictures taken at the crime scene show that the victim's vehicle was set on fire in *868 the carport of the victim's residence. The carport forms part of the residence. Although slight, the exhibits reveal that there is some scorching of the floor of the carport. See State v. Williams, supra. Further, the expert testimony showed that if the fire had not been discovered, the entire house would have been involved; Mr. Duncan's life was clearly endangered in this incident.
The alibi evidence presented by the defendant is inconsistent and was not found to be credible by the jury. Given the close proximity of the defendant's mobile home and the victim's residence, it would have taken very little time for the defendant to set the fire at the victim's house and return to his own home.
Based upon the evidence in this case, the prosecution proved all the essential elements to support the defendant's conviction of aggravated arson of the victim's residence. The jury did not err in finding the defendant guilty as charged.

INEFFECTIVE ASSISTANCE OF COUNSEL
The defendant argues that the failure of trial counsel to request a special jury charge with regard to a nonresponsive offense constituted ineffective assistance of counsel which, on this record, may be resolved on direct appeal in the interest of judicial economy. According to the defendant, his trial counsel should have requested a special instruction that an attempt to commit arson is not a responsive verdict to aggravated arson. The defendant argues that the failure by his trial counsel to request this instruction and to develop the theory that the state brought the wrong charge, because some damage to the residence was necessary to sustain the charge, was both deficient and prejudicial. This argument is without merit.

Legal Principles
As a general rule, a claim of ineffective assistance of counsel should be raised in an application for post-conviction relief (PCR) in the trial court so that a full evidentiary hearing may be had under La. C. Cr. P. art. 930. State v. Williams, 33,581 (La.App. 2d Cir.6/21/00), 764 So.2d 1164. However, if the record fully discloses the evidence necessary to decide the issue, it may be considered on direct appeal in the interest of judicial economy. State v. Willars, 27,394 (La.App. 2d Cir.9/27/95), 661 So.2d 673.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Willars, supra. The U.S. Supreme Court, in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), established a two-prong test to determine ineffective assistance of counsel. First, the defendant must show that counsel's performance was deficient such that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, supra. The relevant inquiry is whether counsel's representation fell below the standards of reasonableness and competency required by prevailing professional standards in criminal cases. State v. Willars, supra. The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Grant, 41,745 (La.App. 2d Cir.4/4/07), 954 So.2d 823, writ denied, XXXX-XXXX (La.12/7/07), 969 So.2d 629.
*869 Secondly, the defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial, with a reliable result. Strickland v. Washington, supra. There is a strong presumption that the conduct of counsel falls within the wide range of reasonable professional assistance. The defendant bears the burden of proving that certain acts or omissions by his counsel were deficient and that this deficiency led to an unreliable outcome. The defendant must prove actual prejudice before that relief will be granted. It is not enough to show that the error had some conceivable effect on the trial's outcome. To prevail under the dual test of Strickland, the defendant must show that, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different. State v. Willars, supra.
A conviction will not be overturned on the grounds of an erroneous jury charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial. An erroneous instruction is subject to harmless error review or, in the case of an ineffective assistance of counsel claim, an analysis of whether the defendant was prejudiced by the error. The question becomes whether it appears beyond a reasonable doubt that the erroneous instruction did not contribute to the jury's finding of guilt or whether the error is unimportant in relation to everything else the jury considered, as revealed in the record. Stated another way, the appropriate standard for determining harmless error is whether the guilty verdict was surely attributable to the jury charge error. State v. Gaddis, 36,661 (La.App.2d Cir.3/14/03), 839 So.2d 1258, writ denied, XXXX-XXXX (La.5/14/04), 872 So.2d 519, cert. denied, 544 U.S. 926, 125 S.Ct. 1649, 161 L.Ed.2d 487 (2005); State v. Cooper, 2005-2070 (La.App. 1st Cir.5/5/06), 935 So.2d 194, writ denied, XXXX-XXXX (La.11/22/06), 942 So.2d 554.

Discussion
Responsive verdicts for aggravated arson are set forth in La. C. Cr. P. art. 814(A)(30). Under the bill of information filed in this case, the responsive verdicts were guilty and not guilty. As pointed out by the defendant, attempted aggravated arson is not one of the responsive verdicts to aggravated arson. There is no requirement that a jury be informed as to non-responsive verdicts. In this case, the jury was fully informed of the elements of aggravated arson and was instructed that if it found those elements proven in this case, they were to find the defendant guilty. If those elements were not proven beyond a reasonable doubt, the jury was instructed to find the defendant not guilty. There was no error in this instruction and defense counsel at trial was not ineffective in failing to request an instruction regarding attempted aggravated arson.
The defendant contends that defense counsel at trial was ineffective for failing to argue that, at most, the facts of this case proved attempted aggravated arson and that, since this was a non-responsive offense to aggravated arson, the jury should have been instructed to acquit the defendant. It appears from this record that defense counsel at trial made a strategy-based decision to concede that an aggravated arson occurred, but argued that the defendant did not commit the offense. Such a strategy decision in this matter does not rise to the level of ineffective assistance of counsel.
Further, as stated above, the jury found, beyond a reasonable doubt, that the defendant committed all the essential elements of the offense of aggravated arson. The *870 record shows that the evidence in this case was sufficient to support the conviction. Therefore, we find that the defendant has failed to establish that his trial counsel was ineffective.

CONCLUSION
For the reasons stated above, we affirm the conviction and sentence of the defendant, Kenneth Wayne Smith, for aggravated arson.
AFFIRMED.
NOTES
[1] The minutes in this case incorrectly reflect that the entire sentence is to be served without benefit of parole. The transcript reveals that only the first two years of the sentence are to be served without benefit of parole. The trial court is instructed to correct this error in the minutes, as the transcript controls over the minutes when there is a conflict. See State v. Lynch, 441 So.2d 732 (La. 1983); State v. Gullette, 43,032 (La.App. 2d Cir.2/13/08), 975 So.2d 753.